IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENCATTO LTD., | No. C 12-2940 CW |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| OBSCURA DIGITAL INCORPORATED, | |
| Defendants. | |

Defendant Obscura Digital has filed a motion to dismiss Plaintiff Encatto's complaint.  Plaintiff opposes the motion.  The motion was decided on the papers.  Having considered all of the parties papers, the Court grants Defendant's motion.  Docket No. 6.

BACKGROUND

Plaintiff is a Belize company that is a subsidiary of Gazprom Invest-Vostok, a Russian company.  Complaint ¶ 2.  Defendant is a California company with its principal place of business in San Francisco.  Complaint ¶ 3.  In 2011, Gazprom engaged Apogee Ventures Ltd., a British company, to arrange a public relations

event to take place in September 2011 in Russia. Complaint ¶ 6. In July 2011, Apogee contacted Defendant to inquire about Defendant producing a film for the September event. Complaint ¶ 7.

Because the date of the event was approaching, Gazprom sought to have Defendant's film crew begin filming as quickly as possible. Id. Accordingly, on July 21, 2011, Gazprom asked Defendant to provide a budget for filming alone, without any pre- or post-production costs. Id. Defendant stated that the film shoot would cost $40,000, including all equipment costs. Id. On July 23, 2011, Apogee and Gazprom representatives met with Defendant. Complaint ¶ 8. During that meeting Apogee and Defendant reached an agreement that upon receipt of a down payment, Defendant would begin filming while the parties continued to negotiate final terms, conditions and pricing for the production phase of the film project. Id.

Plaintiff sent Defendant a $50,000 down payment on Gazprom's behalf. Complaint ¶ 9. Apogee requested that Defendant begin filming immediately. Id. Defendant sent its film crew to Russia and began filming. Id. On July 27, 2011, Defendant informed Apogee that the cost of the ten-day film shoot was $30,000, not $40,000 as it previously quoted. Id.

Apogee and Defendant continued to negotiate pricing for post-production of the film. Complaint ¶ 11. Defendant informed Apogee that it would cost $1,973,400 to complete the film. Id. Apogee did not agree to this amount. Id. On August 10, 2011, Plaintiff sent Defendant an additional $100,000 while Apogee and Defendant continued to negotiate. Id.

On August 16, 2011, Gazprom directed Apogee to make a counter-offer of $631,900 to complete post-production. Complaint ¶ 12. Defendant rejected Apogee's counter-offer and discontinued work on the project. Complaint ¶ 13. Defendant has not returned any portion of the $150,000 it received. Complaint ¶ 17. Plaintiff alleges one cause of action for unjust enrichment. Defendant now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party. Because the Court dismisses pursuant to Rule 12(b)(7), it need not reach Defendant's alternate argument pursuant to Rule 12(b)(6).

## DISCUSSION

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party. Federal Rule of Civil Procedure 19 provides,

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Such parties are referred to as "necessary" or "required" parties. See Fed. R. Civ. P. 19(a)(1).

1  If a necessary party cannot be joined, the court must determine
2  whether "equity and good conscience" will permit the action in the
3  party's absence.  Fed. R. Civ. P. 19(b).  If not, the party is
4  considered "indispensable" and the lawsuit must be dismissed in
5  the absence of that party.  <u>Provident Tradesmens Bank & Trust Co.</u>
6  <u>v. Patterson</u>, 390 U.S. 102, 118 (1968).  The moving party bears
7  the burden of persuasion in arguing for dismissal under Rule 19.
8  <u>Clinton v. Babbitt</u>, 180 F.3d 1081, 1088 (9th Cir. 1999).

9  Defendant argues generally that both prongs of Rule 19(a) are
10 satisfied in this case with respect to Gazprom because the
11 payments at issue were made in relation to the agreement between
12 Gazprom and Defendant.  Defendant asserts that resolution of the
13 question of whether Defendant was entitled to keep the money it
14 received will turn on the agreement between it and Gazprom and the
15 work Defendant performed.  Therefore, Defendant argues that absent
16 Gazprom's presence, "the court cannot accord complete relief among
17 existing parties."  Fed. R. Civ. P. 19(a)(1)(A).

18 In <u>Haas v. Jefferson Nat. Bank of Miami Beach</u>, the Fifth
19 Circuit held that a third party was a necessary party because his
20 "evidence [would] either support the complaint or bolster the
21 defense," making his presence "critical to the disposition of the
22 important issues in the litigation." 442 F.2d 394, 398 (5th Cir.
23 1971).  In that case, the plaintiff sought an injunction directing
24 the defendant bank to issue him shares of its common stock.  442
25 F.3d at 395.  The plaintiff alleged that he had an agreement with
26 the third party through which they would jointly purchase shares
27 of the bank's stock.  The stocks would issue in the third party's
28 name, but the plaintiff would have one-half ownership of the

4

1 shares.  Id.  The plaintiff alleged that the defendant was aware
2 of his ownership interest.  Id.  The plaintiff further alleged
3 that he asked the third party to order the defendant to issue
4 certificates in the plaintiff's name, which the third party did.
5 Id.  However, the bank refused to make the assignment because the
6 third party was indebted to the bank under an agreement which
7 required the third party to "assign, and transfer to the bank
8 property of any kind owned by [the third party] and coming into
9 the possession of the Bank."  Id.  According to the bank, the
10 third party "withdrew the transfer request and instead pledged the
11 stock certificates with a second bank as collateral for a loan
12 there."  Id.

13 At a pre-trial conference, the parties stipulated that the
14 questions of fact remaining to be litigated at trial included the
15 status of the third party's obligation to the bank, and whether
16 the third party had withdrawn his transfer request.  Id.
17 Following the entry of these stipulations, the court entered an
18 order directing the plaintiff to amend the complaint to join the
19 third party as a party to the action.  Id.  Following the
20 amendment, the court granted the defendant's motion to dismiss,
21 finding that joinder of the third party destroyed complete
22 diversity.  Id.

23 Because the plaintiff's primary claim was based on the bank's
24 transfer of the stock to the second bank as collateral for the
25 third party's loan, the Fifth Circuit held that the third party
26 was "more than a key witness whose testimony would be of
27 inestimable value."  Id.  "Instead," the court held, he was "an
28 active participant in the alleged conversion of [the plaintiff's]

5

stock." Id. Moreover, the Fifth Circuit held that the third party's absence would expose the bank to a risk of inconsistent obligations if the plaintiff prevailed and the third party later sued the bank asserting ownership of the shares. Id. Finally, the Fifth Circuit held that a favorable decision for the plaintiff could "impair or impede" the third party's ability to protect his interest in all of the shares of stock. Id.

Here, Gazprom is similarly involved in the transaction alleged in Plaintiff's complaint. Plaintiff alleges that it sent money to Defendant on Gazprom's behalf for work that Defendant was to perform for Gazprom. Accordingly, as Defendant argues, the resolution of whether it is liable to return money to Plaintiff turns on the agreement Defendant reached with Gazprom, and the value of the work it performed for Gazprom. Plaintiff appears to agree, stating that Defendant could demonstrate that it was entitled to keep the $150,000 it received "by proving that the work it performed was worth $150,000 or more." Plaintiff's Opposition at 8. The value of the work can only be evaluated in light of the agreement with Gazprom, the party for whom the work was performed. Like the third party in Haas, Gazprom is "more than a key witness whose testimony would be of inestimable value" and "critical to the disposition of the important issues in the litigation." Id. at 398.

Moreover, if Plaintiff simply "sent" money to Defendant "on Gazprom's behalf," as Plaintiff alleges in the complaint, Gazprom has an interest in the money at issue in this case, which it cannot protect if it is not present in the case. Accordingly, Gazprom is also a necessary party pursuant to Rule 19(a)(1)(B)(i).

6

Finally, there is potential prejudice to Defendant if it is ordered to pay money to Plaintiff in this case, and Gazprom later sues Defendant seeking repayment of the amount paid to Plaintiff on its behalf. Plaintiff's assertion that Gazprom could only sue Defendant for "consequential damages from Obscura's breach of contract" is unavailing. Even if Defendant prevails in this case, it could be prejudiced by being forced to relitigate these issues in a case brought by Gazprom.

The parties agree that Gazprom, a Russian entity, is not subject to the jurisdiction of this Court. Accordingly, the Court must determine whether Gazprom is an indispensable party, that is, whether "in equity and good conscience" this case should be dismissed or proceed in Gazprom's absence. Fed. R. Civ. P. 19(b). The factors the Court considers in making this decision include,

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided . . .; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1)-(4). As discussed above, the Court finds that there is potential for prejudice to both Gazprom and Defendant if this case proceeds in Gazprom's absence. Plaintiff argues that to defeat Plaintiff's claim, Defendant need only show that it is entitled to keep the money paid to it, and that "there is no reason it cannot subpoena Gazprom for documents or deposition testimony." Plaintiff's Opposition at 8. However, Gazprom is a Russian company, not subject to the Court's subpoena power. Accordingly, there can be no assurance that Defendant

7

would be able to obtain the evidence necessary to defend itself against Plaintiff's claim.

Moreover, because resolution of Plaintiff's claim requires an inquiry into the relationship between Defendant and Gazprom, and the work Defendant performed for Gazprom, there is no possibility of fashioning a remedy to reduce the prejudice. The third criteria, whether the judgment rendered in Gazprom's absence would be adequate refers to the "public stake in settling disputes by wholes, whenever possible." Provident Tradesmens Bank, 390 U.S. at 11. As discussed above, Gazprom is an essential player in the dispute at issue, and there is no way that resolution of Plaintiff's claim will guarantee resolution of the whole dispute at issue. Nothing would prevent Gazprom from bringing another action against Defendant.

The Court finds that the first three factors tend to suggest that Gazprom is an indispensable party and dismissal is appropriate. Defendant does not provide any argument or evidence regarding an alternate forum where Plaintiff can bring its claim against Defendant and Gazprom can be joined as a party. While the fourth factor, whether Plaintiff will have an avenue for relief if this case is dismissed, weighs in Plaintiff's favor, the other factors outweigh this factor.

Accordingly, the Court dismisses Plaintiff's complaint for failure to join an indispensable party. This dismissal is without prejudice.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss. Docket No. 6. Plaintiff's complaint against

Defendant is dismissed with leave to amend to refile within fourteen days with Gazprom as a co-plaintiff.  Dismissal is also without prejudice to refiling in a jurisdiction in which Gazprom can be joined.  Because Plaintiff apparently has a preexisting financial relationship with Gazprom, presumably it will be able to join Gazprom as a co-plaintiff, or sue Gazprom for Plaintiff's money back, leaving Gazprom to sue Defendant for Defendant's alleged breach.  If Plaintiff does not file an amended complaint timely, the Clerk shall enter a separate judgment.  Each party shall bear its own costs of suit.

IT IS SO ORDERED.

Dated:

CLAUDIA WILKEN
United States District Judge